UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RAYMOND J. BENSON,

  Plaintiff,

v.

DEUTSCHE BANK TRUST COMPANY
AMERICAS AS INDENTURE TRUSTEE
FOR AMERICAN HOME MORTGAGE
INVESTMENT TRUST 2006-2, NEW REZ
LLC, and PHH MORTGAGE
CORPORATION,

  Defendants.

       * * * * * * * * * * *

Civil Action No. 23-cv-10503-ADB

## **MEMORANDUM AND ORDER**

BURROUGHS, D.J.

  Plaintiff Raymond Benson ("Plaintiff" or "Benson") alleges that Deutsche Bank Trust Company Americas as Indenture Trustee for American Home Mortgage Investment Trust 2006-2 ("DBTCA"), New Rez LLC ("New Rez"), and PHH Mortgage LLC ("PHHL") (collectively, "Defendants") could not and cannot foreclose on his property. [ECF No. 1-1 ("Complaint" or "Compl.")]  Now pending before the Court is Defendants' motion to dismiss.  [ECF No. 9 (the "Motion")].  For the reasons set forth below, the Motion is **DENIED**.

I.  **BACKGROUND**

  A.  **Background Facts**

  The following relevant facts are taken primarily from the Complaint, which the Court assumes to be true when considering a motion to dismiss.  Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).

Benson owns the property at 32 Tall Timbers Lane, Kingston, MA (the "Property"). [Compl. ¶ 5]. The Property was originally granted to Benson on October 17, 2002. [Id. ¶ 11]. On January 17, 2006, he was granted a mortgage loan, secured by the Property, in the amount of $400,000 (the "Mortgage"). [Id. ¶ 12]. The Mortgage was recorded in the Plymouth Registry of Deeds on January 20, 2006, in Book 32092 at page 199, and it identified Union Federal Bank of Indianapolis as the lender and Mortgage Electronic Registration Systems ("MERS") as mortgagee. [Id.].

      1.    <u>Assignments of the Mortgage</u>

On April 8, 2009, "MERS purportedly assigned the [] Mortgage from MERS to Defendant Deutsche Bank Americas," and the agreement "was recorded in the Plymouth County Registry of Deeds in Book 37069 at Page 68 on April 15, 2009" (the "April 2009 Assignment"). [Compl. ¶ 14; <u>see also</u> [ECF No. 1-1 at 48]. That assignment provides that "Union Federal Bank of Indianapolis . . . hereby grant[s] . . . unto Deutsch Bank Trust Company *Americas* as Indenture Trustee for American Home Mortgage Investment Trust 2006-2 . . . the following described mortgage," which is the Mortgage at issue here. [ECF No. 1-1 at 48 (emphasis added)].

More than two years later, on December 5, 2011, a "Confirmatory Assignment of Mortgage" was entered from MERS to "Deutsche Bank Trust Company *Americas*, as Indenture Trustee for American Home Mortgage Investment Trust 2006-2" (the "December 2011 Assignment"). [Compl. ¶ 16 (emphasis added); ECF No. 1-1 at 51]. It was recorded in the Plymouth County Registry of Deeds in Book 40961 at page 132 on December 7, 2011. [Compl. ¶ 16; ECF No. 1-1 at 51].

Nearly three years after that, on August 29, 2014, "MERS again purportedly assigned the [] Mortgage" (the "August 2014 Assignment"). [Compl. ¶ 17]. This time, the assignment

2

provided that MERS assigned the mortgage to "Deutsche Bank *National* Trust Company, as Indenture Trustee for American Home Mortgage Investment Trust 2006-2." [ECF No. 10-4 at 2 (emphasis added)]; see also [Compl. ¶ 17]. It was recorded in the Plymouth County Registry of Deeds in Book 44833 at page 107 on October 14, 2014. [Compl. ¶ 17]; see also [ECF No. 10-4 at 2].

Plaintiff alleges that the third assignment to Deutsch Bank National Trust Company was never explained, [Compl. ¶ 18], and that there is no assignment from Deutsch Bank *National* Trust Company to Deutsche Bank Trust Company *Americas*, [id. ¶ 19].

2.  Default, Acceleration, and Notice

Plaintiff does not offer any allegations regarding his failure to pay the Mortgage, but apparently events transpired that resulted in a claim for default. See [Compl. ¶ 20]. For example, he states that on October 31, 2022, Defendants "filed a complaint in the Land Court" and included as an exhibit "a default notice dated July 18, 2022" (the "Notice"). [Id. ¶ 23]. Though he references the Notice and Defendants appear to have attached it to their Motion, see [ECF No. 10-5], Plaintiff states that Defendants did not send, and he did not receive, "any Default Notice or Acceleration Notice in accordance with Paragraph 22 of the Mortgage," [id. ¶ 20].[1]

---

[1] As part of their Motion, Defendants attach a "90 Day Right to Cure Your Mortgage Default," purportedly sent by New Rez to Benson on July 18, 2022. [ECF No. 10-5 at 3]. The Notice states "BY FIRST CLASS MAIL AND BY CERTIFIED MAIL," [id.], but there is no receipt showing, or declaration stating, that it is the actual notice, if any, sent to and received by Plaintiff regarding his purported default. Moreover, Plaintiff explicitly contests its authenticity and whether it was actually sent or delivered. [ECF No. 11 at 6]. Accordingly, the Court cannot consider the Notice at this stage in the litigation, especially to support the contention that it was mailed and delivered to Plaintiff, which is not sufficiently supported by the document itself or the description in the Complaint. See Thevenin v. M&T Bank Corp., 468 F. Supp. 3d 447, 450 (D. Mass. 2020) (finding the court was "precluded from considering" a letter purportedly sent by a mortgagee to a mortgagor, even though it was "central to plaintiff's complaint," because the

3

As relevant here, Paragraph 15 of the Mortgage and Mass. Gen. Laws ch. 244, § 35A govern the manner in which notice should have been provided to Plaintiff. Paragraph 15 provides the following:

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. . . . The notice address shall be the Property Address. . . . If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

[ECF No. 1-1 at 25 ¶ 15]. Mass. Gen. Laws ch. 244, § 35A states, in part, the following:

> Notice shall be deemed to be delivered to the mortgagor: (i) when delivered by hand to the mortgagor; or (ii) when sent by first class mail and certified mail or similar service by a private carrier to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder.

Mass. Gen. Laws ch. 244, § 35A.

Even if Plaintiff did receive the notice as required, he alleges that the language in the Notice that he "allegedly received" is insufficient under the terms of the Mortgage and applicable Massachusetts law. See [Compl. ¶¶ 21–27]. He specifically alleges that the Notice (1) failed to comply with Paragraph 22 of the Mortgage with respect to the information required for a notice of default, [id. ¶¶ 21–22], and (2) contained "ambiguous and unnecessary language" that was "contrary to, water[ed] down and infringe[d] upon [his] unequivocal right to reinstate the

---

mortgagor contested its authenticity and disputed that the letter was ever sent or was left at her property (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) ("Any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden" unless the document fits within a "narrow exception[] for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint."))).

4

[M]ortgage by paying less the accelerated amount 'anytime' before the foreclosure," [id. ¶¶ 25–26].

First, regarding Paragraph 22, Plaintiff alleges that "any notice sent purporting to state compliance with paragraph 22" of the Mortgage "failed to contain the required information as described in the Mortgage and or contained additional information that was not in strict compliance with said paragraph." [Compl. ¶ 21]. Accordingly, he argues that because he did not receive proper notice of default under Paragraph 22, Defendants "[violated Mass. Gen. Laws. ch.] 183, § 21 for failure to first comply with the terms of the [M]ortgage prior to exercising any power of sale, rendering any acceleration, foreclosure, and sale void." [Compl. ¶ 22].[2]
Paragraph 22 of the Mortgage provides the following:

> Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law

---

[2] Mass. Gen. Laws ch. 183, § 21 provides the following:

> The following "power" shall be known as the "Statutory Power of Sale", and may be incorporated in any mortgage by reference:
>
> (POWER.)
>
> But upon any default in the performance or observance of the foregoing or other condition, the mortgagee or his executors, administrators, successors or assigns may sell the mortgaged premises or such portion thereof as may remain subject to the mortgage in case of any partial release thereof, either as a whole or in parcels, together with all improvements that may be thereon, by public auction on or near the premises then subject to the mortgage, or, if more than one parcel is then subject thereto, on or near one of said parcels, or at such place as may be designated for that purpose in the mortgage, first complying with the terms of the mortgage and with the statutes relating to the foreclosure of mortgages by the exercise of a power of sale, and may convey the same by proper deed or deeds to the purchaser or purchasers absolutely and in fee simple; and such sale shall forever bar the mortgagor and all persons claiming under him from all right and interest in the mortgaged premises, whether at law or in equity.

Mass. Gen. Laws ch. 183, § 21.

>provides otherwise).  The notice shall specify: (a) the default; (b) the action required to cure the default ; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law.  . . .
>
>If Lender Invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law.  Lender shall publish the notice of sale, and the Property shall he sold in the manner prescribed by Applicable Law.  Lender or its designee may purchase the Property at any sale.  The proceeds or the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

[ECF No. 1-1 at 28 ¶ 22].

Second, with respect to his right to reinstate the Mortgage, Plaintiff alleges the following two provisions in the Notice render it insufficient and void, [Compl. ¶ 24]:[3] (1) "'[a]fter October 16, 2022' (the right to cure date/acceleration date), 'you can still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place . . . to avoid foreclosure,'" [id.], and (2) "[i]f your payment is not accepted or your payment is for less than the total amount due (which we may accept without waiving any of our rights), this matter will not be resolved," [id. ¶ 25].

Plaintiff avers that the language regarding his ability to "avoid foreclosure by paying the total past due amount before a foreclosure . . . effectively extended [his] right to reinstate after acceleration to 'anytime' before the foreclosure," [Compl. ¶ 24], and the statement that "th[e]

---

[3] Although the Court will not consider ECF No. 10-5 for purposes of this Motion, here the Court relies on language directly from Plaintiff's Complaint.  [Compl. ¶¶ 24–25].

matter will not be resolved" if payment was not accepted or was for less than the amount due "is contrary to, waters down and infringes upon that right." [Id. ¶ 25].

He further states that the language "is additional," "ambiguous," "unnecessary," and "not in strict compliance with" the Mortgage and applicable law because it "gives the Defendants the power to delay acceptance of or reject the Plaintiff's tender of payment pursuant to his unequivocal right to reinstate under Paragraph [19[4]] of the Mortgage and the right to cure under" Mass. Gen. Laws ch. 244, § 35A, [Compl. ¶ 26].

In sum, Plainitff avers that the Notice

> failed to fully and "properly" describe the Plaintiff's "right to reinstate after acceleration" as required by and detailed in Paragraph [19] of the Mortgage and as required by M.G.L. c. 244 § 35A because the form notice's statement that "If your payment is not accepted or your payment is for less than the total amount due (which we may accept without waiving any of our rights), this matter will not be resolved" is additional and unnecessary language . . . that may serve to water down, contradict or nullify the Plaintiff's unequivocal right to reinstate his mortgage and to "still avoid foreclosure by paying the total past due amount before a foreclosure sale takes place".

[Compl. ¶ 27].

As relevant to these arguments, Paragraph 19 of the Mortgage provides the following:

> **Borrower's Right to Reinstate After Acceleration**. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination or Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may

---

[4] Though Plaintiff refers to Paragraph 18 in his Complaint, [Compl. ¶ 26], Paragraph 19 of the mortgage addresses reinstatement after acceleration, see, e.g., [ECF No. 1-1 at 26], and thus the Court assumes that the reference in the Complaint is an inadvertent error.

> reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. . . . Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. . . .

[ECF No. 1-1 at 26]. Meanwhile, Mass. Gen. Laws ch. 244, § 35A provides, in part, the following:

> (a) Any mortgagor of residential real property located in the commonwealth, shall have a 90-day right to cure a default of a required payment as provided in such residential mortgage or note secured by such residential real property by full payment of all amounts that are due without acceleration of the maturity of the unpaid balance of such mortgage. . . .
>
> (b) The mortgagee, or anyone holding thereunder, shall not accelerate maturity of the unpaid balance of such mortgage obligation or otherwise enforce the mortgage because of a default consisting of the mortgagor's failure to make any such payment in subsection (a) by any method authorized by this chapter or any other law until at least 90 days after the date a written notice is given by the mortgagee to the mortgagor. . . .

Mass. Gen. Laws ch. 244, § 35A.

### B.  Procedural History

This case was originally filed in state court and removed to this Court on March 6, 2023. [ECF No. 1]. On March 30, 2023, Defendants moved to dismiss. [ECF No. 9]. Plaintiff opposed on April 13, 2023, [ECF No. 11], and both parties filed notices of supplemental authority on June 14, 2023. [ECF Nos. 12 (Defendants), 13 (Plaintiff)].

## II.  STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint "must provide 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Cardigan Mt. Sch. v. N.H. Ins. Co., 787 F.3d 82, 84 (1st Cir. 2015) (quoting Fed. R. Civ. P. 8(a)(2)). This pleading standard requires "more than labels and conclusions," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007), and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Rather, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

### III. DISCUSSION

Plaintiff claims that Defendants have not complied with the statutory power of sale requirements and breached a condition precedent to acceleration and foreclosure. [Compl ¶ 45]. As relevant here, he seeks (1) an injunction preventing the transfer of the Property because DBCTA is not the proper assignee of the Mortgage and thus cannot convey title, [id. ¶¶ 46–47], and (2) a declaratory judgment that the acceleration and attempted foreclosure of the Property were void, [id. ¶ 48]. Defendants aver that (1) "DBTCA is clearly the mortgagee of record by assignment [because] the extra assignment outside the chain of title has no effect on DBTCA's status as the current mortgagee," [ECF No. 10 at 5], and (2) they complied with the terms of the Mortgage and the Massachusetts statutes relating to notice and foreclosure, [id. at 6–7]. Finally, Defendants argue that Plaintiff cannot request relief from foreclosure because he has unclean hands resulting from his misuse of the Bankruptcy Court to cancel a foreclosure sale. [Id. at 12].

#### A. Whether DBTCA Is the Mortgagee of Record

Defendants argue that "[t]he recorded documents establish DBTCA as the clear mortgagee of record" because "DBTCA provides a single assignment from the original mortgagee MERS to itself," [ECF No. 10 at 5], the April 2009 Assignment, [Compl. ¶ 14; ECF No. 1-1 at 48–49], "with a supporting confirmatory assignment from two years later, [ECF No. 10 at 5], the December 2011 Assignment, [Compl. ¶ 16; ECF No. 1-1 at 51]. They then state without citation or support that the August 2014 Assignment is "extraneous" and "entirely irrelevant" because "MERS had nothing to assign." [ECF No. 10 at 6].

Plainitff responds that the August 2014 Assignment raises a question of fact as to whether DBTCA is the proper assignee of the Mortgage, and thus whether Defendants will be able to convey the Property. [ECF No. 11 at 15–16]. The Court agrees. On this record, there is no explanation for the August 2014 Assignment that provides the Court with a sufficient basis to determine whether DBTCA is the proper assignee of the Mortgage, and thus what rights, if any, Defendants have with respect to the Mortgage. Plaintiff should be entitled to discovery, for example, into whether DCTCA assigned the mortgage to another entity after the December 2011 Assignment, which could explain the August 2014 Assignment and show that DBTCA is not the proper assignee.

### B.  Whether Defendants Complied with Notice Requirements

Defendants next argue that they strictly complied with the terms of the Mortgage and Massachusetts statutes with respect to foreclosure. [ECF No. 10 at 6–7]. Specifically, Defendants argue that (1) that Plaintiff received notice as required by the Mortgage and applicable law, and (2) the notice contained the disclosures required by the Mortgage and applicable law. See [id.].

First, with respect to whether Plaintiff received proper notice of default, which Plaintiff claims he did not, see [Compl. ¶ 20], Paragraph 22 of the Mortgage provides that "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in the" Mortgage, [ECF No. 1-1 at 28], and Paragraph 15 of the Mortgage states that

> "[a]ll notices given by Borrower or Lender in connection with th[e Mortgage] must be in writing . . . [and] shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. . . . If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument,"

10

[id. at 25]. Mass. Gen. Laws ch. 244, § 35A, in turn, provides that notice regarding the right to cure a default "shall be deemed to be delivered . . . (i) when delivered by hand to the mortgagor; or (ii) when sent by first class mail and certified mail or similar service by a private carrier to the mortgagor at the mortgagor's address last known to the mortgagee or anyone holding thereunder." Id.

Here, the only evidence of notice being sent to Plaintiff is the Notice at ECF No. 10-5, which states "By First Class Mail and by Certified Mail." See, e.g., [ECF No. 10-5 at 3]. Even if the Court could rely on this document as part of its analysis, which it cannot, see supra, there is no evidence that the Notice was actually sent by first class and certified mail, when it was sent, and by whom. Accordingly, on this Record, the Court cannot find that notice was provided to Plaintiff as required by the Mortgage and/or § 35A.

Because Defendants have failed to show, at this stage, that they are the assignee of the Mortgage and that Plaintiff was provided with the required notices in the necessary manner,[5] the Court need not consider Defendants' remaining arguments regarding the specific content of the Notice and its claim that Plaintiff cannot recover due to unclean hands.[6]

IV.     **CONCLUSION**

Accordingly, Defendants' Motion, [ECF No. 9], is DENIED.

**SO ORDERED.**

---

[5] If discovery (1) does not reveal an undisclosed assignment that explains and validates the August 2014 Assignment, and (2) establishes proof of mailing, and the Court has the opportunity to revisit these issues, they would likely be resolved in Defendants' favor.

[6] Although the Court does not decide the issue now, given the identical language of the Notice allegedly provided to Plaintiff here and the language of the notice in Davalos v. HBSC Bank USA, N.A, No. 23-cv-10270 (D. Mass. Feb. 7, 2023), ECF No. 10-1 at 29–36, the Court would be likely to reach the same finding here that "the Notice complied with the [Massachusetts] regulatory scheme," id. (D. Mass. June 13, 2023), [ECF No. 18 at 11].

February 16, 2024                                    */s/ Allison D. Burroughs*
                                                    ALLISON D. BURROUGHS
                                                    U.S. DISTRICT JUDGE